LEMMON, Judge.
Mrs. Joyce M. Gardes filed a suit for separation from bed and board which contained a prayer for alimony pendente lite. After a hearing on the alimony rule, the trial court rendered a judgment on the rule awarding Mrs. Gardes the sum of $1,350.00 per month for the support of herself and her minor children and ordering the husband to pay certain obligations and to be responsible for certain recurring expenses. Mrs. Gardes appealed, seeking an increase in the award.
This case presented unusual circumstances as to both the means of the husband and the needs of the wife. While Mr. Gardes’ gross income for 1969 was $155,-000.00, his income other than from sale of *223 capital assets was only $32,000.00.[1] However, the funds obtained from the sale of capital assets, primarily securities, over the past several years were not used to trade in other securities, but rather were used to establish Go Distributing Corporation, his principal business at the time of trial, and to pay living expenses. Go Distributing was wholly owned by Mr. Gardes, and gains or losses by the corporation reflect in his income. Go Distributing showed net losses for each of the past four years between $22,000.00 and $73,000.00, and these losses were paid in part by funds from the sale of capital assets. Since the proceeds of asset sales are included in income, Mr. Gardes contends that the losses were negative income and should be included in any income evaluation.
We believe that, for purposes of fixing ah alimony award, the community income must be evaluated in the light of the overall financial status of the community at the time of the trial. It is not contended that Mr. Gardes established Go Distributing to deprive his wife of alimony. He had begun the business several years before the separation. . The inventory had been increased to $150,000.00, and a remodeling of the warehouse had just been completed at a cost of about $35,000.00. The establishment of the business had been financed by borrowing money and by selling assets. He. had made interest payments in 1969 of $23,113.76 on his indebtedness, and his bank loan balance at the time of trial was $739,000.00, primarily on behalf of Go Distributing. He had sold 17,000 shares of J. Ray McDermott & Co. stock over the past six years and in 1969 had sold valuable Houston real estate.
His accountant testified that Mr. Gardes had thus depleted his assets and lowered his overall financial status. A pattern of depleting assets to establish a business and to pay living expenses cannot continue indefinitely. The trial judge reasoned that further depletion of the community for a larger alimony award would not be in the best interests of the parties. He observed that he was willing to review his award as soon as “Go Distributing becomes a going concern and produces an income”, and the testimony on these prospects was bright. We believe that he was justified under the circumstances presented in considering the advantages to both parties and the children that the community assets, including the investment in Go Distributing, be preserved.
In the light of these circumstances we now consider the needs of the wife. The family maintained an extremely high standard of living. They occupied a residence valued at $100,000.00 in suburban New Orleans and maintained a country home valued at $125,000.00 in Covington. The three children, ranging in age from 15 to 19, attended privaté schools, and each had his own automobile.
Mrs. Gardes testified that she had written checks, during the twelve months prior to trial, for expenditures in the total sum of $45,495.68, broken down into the following general categories:
$ 2,689.83 - utilities for two homes;
9,629.48 - gardener, maid and ironer; dry cleaning; spending money for children; tutors;
4,828.35 - drug and doctor bills;
13,356.53 - clothing; department stores; furniture; groceries;
4,282.75 - hardware stores; pest control; appliance and air-conditioning repairs; periodical subscriptions; beauty salon; dressmaker;
2,127.87 - miscellaneous Covington expenses (feed bills, repairs, plant spraying, etc.)
2,986.86 - school tuition;
1,937.08 - children's vacations, driving lessons for children, carnival throws, ($565.00 for stove for Covington);
2,050.00 - mink coat and hat;
176.43 - taxes on rental house owned by wife;
1,430.50 - insurance policy.
She testified that her husband made deposits into her checking account whenever necessary, paid $50.00 per month allowance *224 to their son, and additionally handled all gas and repair bills on the cars and paid all mortgage notes.
At the time of trial of the rule, Mrs. Gardes presented $2,304.45 in bills due, mostly for clothing. She contends that she needs alimony in the amount of $3,000.00 to $3,500.00 per month for herself and the children.[2]
The trial judge indicated to Mrs. Gardes that the award of $1,350.00 was “to operate your household, to pay your groceries and utilities, as well as your clothing bill”. He ordered Mr. Gardes to also pay the current bills presented by Mrs. Gardes, and to regularly pay all expenses of the maintenance and upkeep of the Covington estate, all automobile expenses including insurance premiums for the wife and children, school tuition for the children, all medical expenses of the wife and children, and hazard insurance on both homes.
Although an accurate figure cannot be determined from the generalized listing of expenses over the past twelve months, a projection indicates Mrs. Gardes will receive from the award approximately $28,000.00 per year, in addition to four expense-free automobiles and paid hazard insurance premiums. She also receives $65.00 per month rental income from separate property, and she had $8,000.00 in cash at the time of trial.
An award of alimony pendente lite is largely within the discretion of the trial judge, and when such discretion is exercised fairly and without abuse, it will not ordinarily be interfered with on appeal. Horne v. Horne, 210 So.2d 380 (La.App. 2 Cir. 1968).
The trial judge evaluated the testimony of the parties and their accountants, and considered the standard of living previously enjoyed by the parties. He found that this standard could no longer be maintained,[3] and he endeavored to make an award which would adequately meet the needs of the wife and children while also meeting the need to preserve the community assets, particularly the investment in Go Distributing.
We conclude that the trial judge exercised his discretion fairly and without abuse.
Accordingly, the judgment of the district court is affirmed. All court costs are to be paid by the defendant-appellee.
Affirmed.
CHASEZ, J., concurs.

. For the years 1966 through 1969, this source of income was substantially as follows:
Oil Royalties — $21,000.00 to $30,000.00
Dividends — $4,200.00 to $10,900.00
Director’s fees — $1,876.00 to $2,460.00

. However, she was unable to specify an amount for any particular item of regular expenses or to indicate which expenses from the previous year were recurring expenses.

. Where justified bp the foots, the wife is entitled to alimony sufficient to maintain her in a style comparable to that which she enjoyed prior to her separation from her husband. Small v. Small, 173 So.2d 854 (La.App. 4 Cir. 1965). (Emphasis supplied).